**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.B., S.B., B.J., and F.J.**

**No. 21-0823** (Mercer County 19-JA-70, 19-JA-71, 19-JA-72, and 21-JA-48)

**MEMORANDUM DECISION**

Petitioner Mother J.J., by counsel Robert P. Dunlap II, appeals the Circuit Court of Mercer County's September 17, 2021, order terminating her parental rights to T.B., S.B., B.J., and F.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Patricia Kinder Beavers, filed a response on the children's behalf in support of the circuit court's order and a supplemental appendix. Respondent Father D.B., by counsel Bobby J. Erickson, also filed a response in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the family when the DHHR failed to timely file a family case plan and in terminating her parental rights rather than extending her improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2019, the DHHR filed a child abuse and neglect petition alleging that it received a referral that petitioner allowed at least one of the children, then twelve-year-old S.B., to be sexually abused by her boyfriend. According to the petition, the DHHR received the referral in April of 2019. The referral stated that S.B. "recently disclosed that milk comes out of [the boyfriend]'s pee wee. The child stated that she and [the boyfriend] play a candy game where both

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]D.B. is the father of T.B. and S.B. only.

the child and [the boyfriend]'s clothes come off." The referral alleged that petitioner's boyfriend performed various sexual acts on S.B. The DHHR alleged that two days after receiving the referral, nonabusing respondent father D.B. filed an emergency protective order seeking custody of T.B. and S.B. The protective order was later granted.

According to the petition, a Child Protective Services ("CPS") worker spoke with S.B. and T.B.'s paternal grandmother, who stated that S.B. disclosed she had been sexually abused. The grandmother stated that S.B. got off of the bus from school one day and began crying. Upon being prompted by the grandmother, the child stated that she had a secret and disclosed the sexual abuse. The grandmother further stated that S.B. explained she had "seen [petitioner's boyfriend]'s 'pee pee' and that the child disclosed that her and [the boyfriend] play a candy game together. The game includes [S.B.] and [the boyfriend] getting naked and him licking her pee pee and milk coming out of his pee pee."

The CPS worker spoke with petitioner and her boyfriend at their home in April of 2019. Petitioner denied the allegations and stated they were fabricated in order for the children to be removed from her custody. Petitioner told the CPS worker that she did not believe S.B. would make such allegations, nor would her boyfriend commit sexual abuse. The DHHR alleged that petitioner agreed to a temporary protection plan, including keeping the boyfriend out of the home for seven days to allow forensic interviews with the children to take place. The boyfriend also denied the allegations and agreed to the temporary protection plan.

During her interview, S.B. disclosed that petitioner's boyfriend put his genitalia in her mouth and that he licked her genitalia as well. The child disclosed that this occurred when petitioner was not home and that they put their clothes back on when petitioner arrived home. The child stated that she could not tell anyone because it was a secret. S.B. further disclosed witnessing domestic violence between petitioner and the boyfriend. During his interview, T.B. also disclosed witnessing domestic violence, including the boyfriend pushing petitioner down when he was upset and slapping petitioner on multiple occasions. In May of 2019, the CPS worker explained the children's disclosures to petitioner. The DHHR alleged that petitioner stated that she believed the children were "brain washed" by respondent father D.B. and his family in an effort to remove the children from her custody. Petitioner denied that her boyfriend sexually abused S.B. and denied any incidents of domestic violence. Finally, the DHHR alleged that the boyfriend was facing criminal charges for the allegations of sexual abuse and was subject to home incarceration at the time of the petition. Based on these facts, the DHHR alleged that T.B., S.B., and B.J. were abused and neglected.

The circuit court held an adjudicatory hearing in October of 2019 wherein petitioner moved to continue the proceedings, which the court granted. The court held an additional hearing in December of 2019 during which it deferred ruling on adjudication and ordered petitioner to participate in a parental fitness evaluation.

In February of 2020, the DHHR filed an amended child abuse and neglect petition with additional allegations that petitioner knew about S.B.'s sexual abuse. Specifically, the DHHR alleged that S.B. disclosed during therapy that petitioner knew of and witnessed the sexual abuse

against her. During a preliminary hearing on the amended petition, the court ratified removal of the children from petitioner's home.

After several continuances to determine paternity of the children and allow petitioner to retain new counsel, the court held an adjudicatory hearing on the amended petition in January of 2021 during which petitioner stipulated to failure to protect the children. The court accepted petitioner's stipulation and adjudicated her as an abusing parent. The court further found that T.B., S.B., and B.J. were neglected children as a result.

The next month, the circuit court held a hearing and the DHHR presented evidence supporting the termination of petitioner's parental rights while petitioner moved for an improvement period. The court held a continued hearing in April of 2021 during which it took additional testimony and admitted petitioner's medical records. Upon consideration of the evidence submitted, the court found that the DHHR had made reasonable efforts toward a permanency plan for the children. The court further found that there was more than enough evidence to terminate petitioner's parental rights at the hearing. However, the court did not terminate petitioner's parental rights and instead ordered that she undergo drug screening and comply with recommendations stemming from her parental fitness evaluation.

Later in April of 2021, the DHHR filed a second amended petition following the birth of F.J. The DHHR alleged that it had continued concerns regarding petitioner's ability to protect the children from inappropriate caregivers. The DHHR further alleged that petitioner's boyfriend was the putative father of the newborn child, and stated that he had been convicted of criminal charges relating to sexual abuse of S.B. and was awaiting sentencing.

The circuit court held an adjudicatory hearing in June of 2021 during which the court found that petitioner had neglected the newborn child due to inappropriate relationships. Paternity testing established that petitioner's boyfriend was the father of F.J. and he voluntarily relinquished his parental rights to the child. Further, the court granted petitioner a post-adjudicatory improvement period.

The DHHR filed a family case plan in July of 2021 outlining the terms and conditions of petitioner's improvement period. Petitioner was required to maintain positive and healthy relationships; maintain stable and appropriate housing; obtain employment; participate in therapy and follow any recommendations; address unknown mental health status and deficits; participate in adult life skills and parenting classes; participate in random drug screens; visit with the children; and properly assist with the children's medical needs.

The circuit court held a final dispositional hearing in September of 2021 during which the DHHR demonstrated that petitioner failed to comply with the requirements of her family case plan. The DHHR presented evidence that petitioner was not forthcoming with her relationships when meeting with multidisciplinary team members. The DHHR put on evidence that petitioner had previously agreed to cease contact with her boyfriend, who was convicted of sexually abusing S.B. However, petitioner later give birth to F.J. and paternity testing confirmed that the boyfriend was the father. Further, a law enforcement officer testified about an incident in June of 2021 during which they arrived at petitioner's home looking for the boyfriend after he missed his scheduled

sentencing hearing, and a warrant was issued for his arrest. The officer stated that petitioner admitted that the boyfriend had been at her residence.

After considering the evidence, the court found that petitioner failed to end her relationship with her boyfriend, despite his sexual abuse of S.B. Further, it found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. Petitioner now appeals the circuit court's September 17, 2021, order terminating her parental rights to the children.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred when it declined to extend her improvement period. She emphasizes that she substantially complied with the terms of her improvement period by obtaining appropriate housing, maintaining employment, and attending her visitations with the children and that an extension of her improvement period was warranted. Petitioner contends that, in connection with the law enforcement incident, she only allowed her boyfriend into her home after he missed a hearing because he had threatened her with bodily harm if she did not allow him to remain in the home. Petitioner claims that she was overcome with fear of physical violence and thus failed to contact law enforcement that he was staying in her home against her will. Upon our review, petitioner is entitled to no relief on appeal.

West Virginia Code § 49-4-610(6) governs extensions to improvement periods and provides that

---

[3]The father of T.B. and S.B. is a nonabusing parent, and the children have achieved permanency in his care. B.J.'s paternity is unknown and proceedings regarding the unknown father remain ongoing. As noted above, F.J.'s father voluntarily relinquished his parental rights to F.J. The permanency plan for B.J. and F.J. is adoption by their grandmother.

4

[a] court may extend any improvement period . . . for a period not to exceed three months when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child[ren].

*See also* Syl. Pt. 7, *In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010) (holding that the circuit court must make the findings specified in West Virginia Code § 49-4-610(6) prior to granting an extension of an improvement period).

Here, the circuit court did not err in denying petitioner's motion for an extension of her improvement period due to her failure to substantially comply with the terms and conditions of that improvement period. "When any improvement period is granted to a [parent] . . . the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4). The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect either on her own or with help. As found by the circuit court, petitioner continued to maintain a relationship with her boyfriend, despite the fact that he had sexually abused one of her children. While petitioner claims that he threatened her with bodily harm if she refused to allow him to remain in her home, she failed to report his conduct to law enforcement and the court found her testimony incredible. This is a credibility determination that we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Although petitioner argues that she made improvements in aspects of the conditions of abuse and neglect, these improvements alone are not enough to overcome other persistent conditions of abuse and neglect. The record demonstrates that by continuing to engage with an inappropriate partner, petitioner has endangered the children. Based on petitioner's failure to meet these terms of her improvement period, we find no error in the circuit court denial of petitioner's motion for an extension of her improvement period.

Next, petitioner argues that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the family when it failed to timely file a family case plan as required by West Virginia Code § 49-4-408(a). Petitioner contends that she "never actually had a finalized case plan to follow." We disagree.

As this Court has explained,

"[t]he purpose of the family case plan as set out in W.Va. Code [§ 49-4-408(a)] . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003). Here, petitioner contends that the DHHR failed to file a family case plan. However, the record reflects that the DHHR filed

case plans in February of 2020 and July of 2021. As such, petitioner's arguments that there was no case plan "formulated in this case" is disingenuous when faced with the above evidence in the record. Additionally, the record is full of other instances that show that petitioner was on notice of her goals and requirements. Petitioner's case plan in July of 2021 contained terms requiring her to cooperate in services to overcome the problems stated in the petition; maintain safe and stable housing; obtain employment; address unknown mental health status and deficits; address her lack of adequate parenting, knowledge, and skills to care for the children; and participate in ordered random drug screens. Further, petitioner stated that she would comply with any terms imposed by the court, the DHHR, and the MDT in her motion for a post-adjudicatory improvement period. As such, there is clear evidence that there was a case plan, that petitioner knew or should have known the contents of the case plan, and thus knew what was required of her to regain custody of the children.

Moreover, based on the evidence of petitioner's sporadic compliance and her failure to abide by the circuit court's orders, the court found that petitioner failed to follow through with the DHHR's rehabilitative services. Importantly, this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(d)(3). On appeal, petitioner asserts that the circuit court's decision to terminate her parental rights was improper when she was making substantial progress toward reunification. However, the circuit court's findings are based on substantial evidence that petitioner was never fully compliant in her improvement period and that she failed to cease contact with her boyfriend, endangering her ability to properly parent the children. As such, the court found that termination of petitioner's parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal.

Lastly, because the proceedings in circuit court regarding B.J.'s unknown father remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress

and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 17, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment